UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ZURICH AMERICAN INSURANCE
COMPANY,

       **Plaintiff,**

  -against-

WAUSAU BUSINESS INSURANCE
COMPANY,

       **Defendant.**
-------------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 8/29/16

**1:14-cv-3382**

<u>**Opinion and Order**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

 This is a dispute between two insurance companies over which is obligated to defend and indemnify certain defendants in a separate lawsuit filed in New York State Court for the County of New York, *Robinson v. Brooks Shopping Centers LLC, et al.*, Index No. 106847/13 (the "Underlying Action"). Specifically, Plaintiff Zurich American Insurance Company ("Zurich") seeks a declaratory judgment that Defendant Wausau Business Insurance Company ("Wausau") is obligated to defend and indemnify the owner and the management company of a shopping center against a personal injury lawsuit filed by a visitor to the shopping center. The parties now cross-move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, Wausau's motion is granted and Zurich's motion is denied.

## BACKGROUND

### I. Factual Background

 Brooks Shopping Centers, LLC ("Brooks") owns the Cross County Shopping Center, in Yonkers, New York. (Def.'s Rule 56.1 Statement ("Def.'s 56.1"), ECF No. 51, ¶ 5.) Macerich Management Company ("Macerich") operates the shopping center. (Def.'s 56.1 ¶ 5.) Brooks entered into a contract with the Whiting-Turner Contracting Company ("Whiting-Turner"), a

1

general contractor, pursuant to which Whiting-Turner would oversee and coordinate a construction project at the shopping center. (Def.'s 56.1 ¶ 9.) Whiting-Turner, in turn, entered into a subcontract with Montesano Brothers, Inc. ("Montesano"), pursuant to which Montesano would perform certain underground utility work at the shopping center. (Def.'s 56.1 ¶ 25.)

Under the contract between Brooks and Whiting-Turner, Whiting-Turner was required to purchase and maintain insurance to protect against claims which "may arise out of or result from the Contract operations in connection with the Project, whether such operations be by itself or by any subcontractor, by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable." (Def.'s 56.1 ¶ 24.) Plaintiff Zurich issued a general liability policy for the period from August 1, 2009, to August 10, 2010, to Whiting-Turner. (Def.'s 56.1 ¶ 28.) The policy has a liability limit of $2 million for each occurrence, and it has a $500,000 deductible for each occurrence for bodily injury. (Def.'s 56.1 ¶ 28.) Brooks and Macerich qualify as additional insureds under the Zurich policy. (Def.'s 56.1 ¶ 31.)

Under the contract between Whiting-Turner and Montesano, Montesano too was required to carry commercial general liability insurance and to include Whiting-Turner as an additional insured. (Def.'s 56.1 ¶ 26.) The contract provided that "Whiting-Turner, the Owner [Brooks] and other entities as may be reasonably requested shall be named as an additional insured" under the policy. (Def.'s 56.1 ¶ 26.) Defendant Wausau issued a general liability policy for the period from January 1, 2010, to January 1, 2011, to Montesano. (Def.'s 56.1 ¶ 13.) As relevant here, the policy contained two endorsements related to additional insureds: Item 10 and Item 11. (Def.'s 56.1 ¶ 17). Item 10 provides, in part, as follows:

> *Item 10 - EXPANDED BLANKET ADDITIONAL INSURED AND WAIVER OF SUBROGATION (FOR INSTALLATION EXPOSURES)*

> *A. SECTION II- Who is An Insured is amended to include any person or organization to whom you are obligated by a written agreement to procure additional insured coverage, provided that:*
>
>> *1. The "bodily injury", "property damage," or "personal and advertising injury" giving rise to liability occurs subsequent to the execution of the written agreement; and*
>>
>> *2. The written agreement is in effect at the time of the "bodily injury," "property damage," or "personal and advertising injury" for which coverage is sought.*
>
> *That person or organization shall be referred to as the additional insured.*
>
> *The coverage afforded to the additional insured is limited to liability caused, in whole or in part, by the negligent acts or omissions of you, your employees, your agents, or your subcontractors, in the performance of your going operations.*

(Def.'s 56.1 ¶ 18.) Item 11 provides, in part, as follows:

> *Item 11- BLANKET ADDITIONAL INSURED AND WAIVER OF SUBROGATION- PERSON OR ORGANIZATION*
>
> *A. Section II- Who Is An Insured is amended to include as an additional insured any person or organization to whom you are obligated by a written agreement to procure additional insured coverage, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf.*
>
>> *1. In performance of your ongoing operations; or*
>>
>> *2. In connection with premises owned by you provided that:*
>>
>>> *(a) The "bodily injury", "property damage" or "personal and advertising injury" giving rise to liability occurs subsequent to the execution of the agreements; and*
>>>
>>> *(b) The written agreement is in effect at the time of the "bodily injury", "property damage", or "personal and advertising injury" for which coverage is sought.*
>
> *That person or organization shall be referred to as additional insured. [. . .]*
>
> *C. Exclusions*
>
> *The insurance does not apply to:*

>   *1. Any premises or equipment leased to you.*
>
>   *2. Any construction, renovation, demolition or installation operations performed by or on behalf of you, or those operating on your behalf.*

(Def.'s 56.1 ¶ 19.)

In June 2011, Roxanna Robinson commenced the Underlying Action in New York Supreme Court, against Brooks and Macerich Real Estate Company.[1] (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1"), ECF No. 43, ¶ 2.) Ms. Robinson alleged that on April 5, 2010, she slipped and fell while walking by or through a construction site located at the Cross County Shopping Center. (Exh. B ("Underlying Compl."), Mindlin Decl., ECF No. 54-2, ¶ 4.) She alleged that Brooks and Macerich "created a dangerous condition by failing to adequately protect [her] from ongoing construction" (Underlying Compl. ¶¶ 11, 25), and that she was "caused to fall due to the negligence of the defendants . . . ." (Underlying Compl. ¶¶ 10, 24.) She alleged that "the accident and resulting injuries . . . were caused solely by the negligence of the defendants and not due in any part to the negligence of plaintiff." (Underlying Compl. ¶ 6.) As a result of her fall, she alleged, she suffered from severe injuries, and she sought damages in the amount of $1,000,000. (Underlying Compl. ¶¶ 28-29.)

On October 3, 2011, Whiting-Turner reported the complaint to Zurich, its insurer, and advised Zurich that Whiting-Turner had received correspondence from Brooks's insurance carrier "regarding an incident involving Ms. Roxana Robinson, who alleges she fell in a ditch due to construction." (Pl.'s 56.1 ¶ 8.) Whiting-Turner's claim to Zurich also noted, "The work performance in the area where the alleged incident occurred was the responsibility of Montesano Brothers, Inc." (Pl.'s 56.1 ¶ 9; Exh. C, Mindlin Decl., ECF No. 54-3, 7.) Zurich retained a law

---

[1] In October 2011, she filed an amended summons and complaint, correcting the second defendant to Macerich and also correcting Macerich's service address. (Pl.'s 56.1 ¶ 3.)

4

firm to defend Brooks, and eventually Macerich as well, in the action. (Pl.'s 56.1 ¶ 10.) Zurich later brought a third-party action against Montesano, alleging that Brooks and Macerich had entered into a prior agreement with Montesano to perform certain construction work and that any injuries to Ms. Robinson were caused and brought about by the negligence of Montesano. (Pl.'s 56.1 ¶¶ 11-12.)

In a decision dated September 21, 2015, Judge Manuel J. Mendez of the New York Supreme Court, New York County, granted summary judgment in favor of Brooks and Macerich, concluding that they neither created the defective condition, nor had actual or constructive notice of the defective condition, and that Ms. Robinson failed to put forth any admissible evidence to the contrary. (Exh. E ("State Ct. Order"), Mindlin Decl., ECF No. 54-5.) Judge Mendez also granted summary judgment in favor of Montesano, the third-party defendant, concluding that "the alleged defect causing Ms. Robinsons' fall was de minimis and therefore not actionable." (State. Ct. Order.) On that basis, Judge Mendez held that Brooks and Macerich had not "stated a basis for summary judgment as to [their] claims for common law and contractual indemnification." (State Ct. Order.) Ms. Robinson, Brooks, and Macerich have each moved to reargue, and each has also filed a notice of appeal of different aspects of Judge Mendez's decision. (Pl.'s 56.1 ¶ 16.)

## II. Procedural Background

On May 9, 2014, Zurich initiated this action against Liberty Mutual Insurance Company, an affiliate of Wausau. (ECF No. 2.) On September 22, 2014, Zurich filed an amended complaint, correcting the name of Liberty Mutual Insurance Company to Wausau Business Insurance Company and adding Travelers Constitution State Insurance Company as a defendant. (ECF No. 13.) The parties exchanged document discovery. (*See, e.g.*, ECF No. 32.) On

5

December 3, 2015, following the close of discovery, the parties voluntarily discontinued the action against Travelers without prejudice. (ECF No. 41.) On January 11, 2016, the parties cross-moved for summary judgment. (ECF Nos. 42-53.)

## LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those facts that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when a reasonable finder of fact could render a verdict in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F.3d 280, 285–86 (2d Cir. 2002)). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14 Civ. 07354 (JGK), 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citation omitted); *see also* Fed. R. Civ. P. 56(c). "If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co.*, 2016 WL 4120635, at *4 (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## DISCUSSION

Zurich argues that Brooks and Macerich qualify as additional insureds under Item 11 of the Wausau policy, and that Item 10 does not apply because it is too ambiguous, but if it does, Brooks and Macerich also qualify as additional insureds under Item 10. Thus, it argues, Wausau

6

must defend and indemnify both Brooks and Macerich.[2] Wausau, on the other hand, argues that neither Brooks nor Macerich qualify as additional insureds under either Item 10 or Item 11, and thus, it owes no duty to defend or indemnify them.

There being no genuine issues of material fact as to the questions of the applicability of Items 10 and 11, summary judgment is appropriate. The Court agrees with Zurich that Item 10 does not apply; however, it agrees with Wausau that under Item 11, Wausau has no duty to defend or indemnify Brooks and Macerich. Accordingly, summary judgment is granted in favor of Wausau.

I.   Item 10

Item 10 is titled "Expanded Blanket Additional Insured and Waiver of Subrogation (For Installation Exposures)." ((Def.'s 56.1 ¶ 18.) It adds as additional insureds "any person or organization to whom [the policyholder] is obligated by a written agreement to procure additional insured coverage," so long as the event giving rise to liability occurred subsequent to the execution of the written agreement and the written agreement is in effect at the time that the event. (Def.'s 56.1 ¶ 18.) The coverage is limited to "liability caused, in whole or in party, by the *negligent* acts or omissions" of the policyholder, or its employees, agents, or subcontractors. (Def.'s 56.1 ¶ 18 (emphasis added).) Zurich argues that Item 10 does not apply here because it only applies "For Installation Exposures," and that phrase is too ambiguous for Item 10 to be given effect here. (Pl.'s Mem. Supp. Summ. J. ("Pl.'s Mem."), ECF No. 47, 13-15.)

---

[2] Zurich previously alleged that Wausau was obligated to defend Whiting-Turner. (*See* Amd. Compl., ECF No. 14, ¶ 26.) Wausau moved for summary judgment on that claim, arguing that Wausau does not owe Whiting-Turner a duty to defend, as no suit was commenced against Whiting-Turner. (Def.'s Mem. Supp. Summ. J. ("Def.'s Mem."), ECF No. 50, 23.) In its own motion for summary judgment and in its opposition papers, Zurich neither argues that Wausau owes Whiting-Turner a duty to defend, nor does it defend against Wausau's argument. Thus, the Whiting-Turner claim is deemed abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned."); *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, --- F. 3d ---, No. 15-2037-CV, 2016 WL 4434396, at *12 (2d Cir. Aug. 22, 2016).

Under New York law, "[t]he initial interpretation of a contract is a matter of law for the court to decide." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (citation and internal quotation marks omitted). "The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract." *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012) (citation omitted). Thus, as part of its threshold interpretation of the contract, the court must consider "whether the terms of the insurance contract are ambiguous." *Morgan Stanley*, 225 F.3d at 275. "When an insurance contract's provisions are 'unambiguous and understandable, courts are to enforce them as written.'" *Swift Spindrift Ltd. v. Alvada Ins. Inc.*, --- F. Supp. 3d ---, No. 09 Civ. 9342 (AJN), 2016 WL 1271061, at *5 (S.D.N.Y. Mar. 29, 2016) (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)). But where "an insurance provision is ambiguous, the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Id.* (quoting *Morgan Stanley*, 225 F.3d at 275-76). In the event that "the extrinsic evidence does not yield a conclusive answer as to the parties' intent, a court may apply other rules of contract construction, including the rule of *contra preferentem*, which generally provides that where an insurer drafts a policy any ambiguity in the policy should be resolved in favor of the insured." *Id.*

"The test for ambiguity is whether the language in the insurance contract is susceptible to two reasonable interpretations." *Liberty Mut. Ins. Co. v. Zurich Am. Ins. Co.*, No. 11 Civ. 9357 (ALC), 2014 WL 1303595, at *4 (S.D.N.Y. Mar. 28, 2014) (quoting *Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 877 N.Y.S.2d 359, 361 (2d Dept. 2009)). An ambiguity exists "where the terms could suggest more than one meaning when viewed objectively by a reasonably

8

intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Swift*, 2016 WL 1271061, at *5 (quoting *Morgan Stanley*, 225 F.3d at 275) (internal quotation marks and alterations omitted).

The Court therefore begins by determining "whether a reasonably intelligent person who has examined the context of the [policy] and who is cognizant of the customs, practices, usages and terminology as generally understood in the [insurance industry]" would find phrase "For Installation Exposures" to be susceptible to more than one meaning. *See Morgan Stanley*, 225 F.3d at 275. The term "Installation Exposures" is defined nowhere in the policy, nor is there any evidence that it is a term of art in the industry. (*See* Exh. 4 ("Wausau Policy"), Hurley Decl., ECF No. 52-4). Without the guidance of industry customs or practices or an internal definition, the phrase is susceptible to more than one meaning. It could, for instance, refer to alleged injuries arising from exposure to materials present during installation, like asbestos. *C.f. Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 177 (N.Y. 1997) (discussing "negligent installation" claim). Or it could refer more generally to exposures to liability arising from installation operations. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, No. 14 Civ. 8002 (JSR), 2015 WL 5440694, at *7 (S.D.N.Y. Sept. 9, 2015) (discussing insurer's "exposure to liability"). This is to say nothing of the various possible meanings of the word "installation" itself—for instance, "installation" could be given a meaning akin to "fixture," *see In re Brooklyn Bridge Sw. Urban Renewal (Project N.Y.R.-67), Borough of Manhattan, City of New York*, 282 N.Y.S.2d 597, 599 (N.Y. Sup. Ct. 1967)), or it could be given a more colloquial meaning, referring to the act of installing any object.

Wausau correctly notes that "the lack of a definition" in a policy does not "in and of itself[] render a word ambiguous." *Lend Lease (U.S.) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 22 N.Y.S.3d 24, 29 (1st Dept. 2015). But the problem here is not merely that a definition is missing from the policy. Rather, the problem is that the phrase remains susceptible to multiple interpretations even by a reasonable person who is aware of industry customs, practices, uses, and terminology.

Because "For Installation Exposures" is susceptible to at least two reasonable interpretations, the Court may look to extrinsic evidence to determine its meaning. *See Morgan Stanley*, 225 F.3d at 275-76. The parties, however, present no extrinsic evidence.[3] Instead, Wausau argues that the phrase "Installation Exposure" is "only in the title," and "not in any of the operative language of the policy." (Def.'s Opp. Summ. J. ("Def.'s Opp."), ECF No. 56, 18.) But this runs counter to the "general principle that courts, in interpreting insurance policies, should strive to give meaning to every sentence, clause, and word of a contract of insurance." *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 632-33 (N.Y. 1997) (citations, alterations, and internal quotation marks omitted). The Court may not disregard the phrase "For Installation Exposures" because it is in the title of a section, rather than in its body; if anything, the fact that it is in the title implies that it is of greater importance, affecting the applicability of the entire section, rather than that is has no bearing on the meaning of the policy.

Without any extrinsic evidence to provide a conclusive answer as to the parties' intent, the Court turns to other rules of contract construction, specifically the rule of *contra proferentem*, *See Morgan Stanley*, 225 F.3d at 275. That rules provides "the ambiguity must be resolved

---

[3] Zurich asserts that it requested underwriting information that would shed light on this endorsement's applicability, but Wausau refused to provide it. (Pl.'s Mem. 13.) Neither party has presented any evidence to the Court.

10

against the insurer which drafted the contract." *RSUI Indem. Co. v. RCG Grp. (USA)*, 890 F. Supp. 2d 315, 324 (S.D.N.Y. 2012) (quoting *State v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (N.Y. 1985)) (alterations omitted), *aff'd*, 539 F. App'x 3 (2d Cir. 2013); *see id.* (collecting cases). This insurance-specific principle derives from the broader *contra proferentem* principle, which holds that "equivocal contract provisions are generally to be construed against the drafter." *Landpen Co., L.P. v. Maryland Cas. Co.*, No. 03 Civ. 3624 (RJH), 2005 WL 356809, at *4 (S.D.N.Y. Feb. 15, 2005) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000)). Accordingly, it is appropriate to construe the phrase, "For Installation Exposures," against Wausau, the drafter. Thus construed, Item 10—and its provision limiting additional insured coverage only to those situations where Montesano or its agents were negligent—applies only to claims arising out of activities related to "Installation Exposures." That term itself remains opaque—but no party alleges that Montesano was engaged in any such activities. Therefore, Item 10 does not apply.

This is so despite the guiding rule that *contra proferentem* "is not applicable in a contest between two insurance companies." *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 573 (2d Cir. 1991). As an initial matter, Wausau itself does not argue that the principle is inapplicable in this action. More importantly, the Second Circuit clarified that the application of *contra proferentem* is inappropriate where "the justifications for applying the rule seem to be lacking"—i.e. it is a "dispute is between two insurance companies, both parties are sophisticated business entities, familiar with the market in which they deal and armed with relatively equivalent bargaining power"—and "there exists ample extrinsic evidence, which, properly considered, clarifies [the policy]." *Id.* As discussed previously, there is no extrinsic evidence. Further, while Zurich is a sophisticated business entity, its policyholder, Whiting-Turner, is not.

And Whiting-Turner itself may be liable to reimburse Zurich up to half a million dollars in the Underlying Action. (*See* Pl.'s 56.1 ¶¶ 33-34.) Finally, given the complete absence of extrinsic evidence, even if the contra-insurer principle is not applicable here, the more general principle of *contra proferentem* is: "as a matter of last resort," "ambiguities in contracts should be construed against the drafter." *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997); *see also Revson*, 221 F.3d at 67. Thus, the language of Item 10 should be construed against Wausau, rendering Item 10 irrelevant to the dispute here.

## II.    Item 11

Item 11 is titled, "Blanket Additional Insured and Waiver of Subrogation—Person or Organization." (Def.'s 56.1 ¶ 19.) It adds as additional insureds "any person or organization to whom [the policyholder] [is] obligated by a written agreement to procure additional insured coverage . . ." (Def.'s 56.1 ¶ 19.) It expressly excludes, however, "any construction, renovation, demolition or installation operations performed by or on behalf of you, or those operating on your behalf" (the "Construction Exclusion"). (Def.'s 56.1 ¶ 19.)

Zurich does not dispute that liability arose out of Montesano's performance of construction activities. (Pl.'s Mem. 6-7, 9.) However, Zurich argues that Wausau must nevertheless defend and indemnify both Brooks and Macerich because Wausau did not timely disclaim coverage, as Zurich alleges is required by Section 3420(d) of the New York Insurance Law. (*Id.*) Wausau, on the other hand, argues that it is not required to defend or indemnify either Brooks or Macerich for a number of reasons, among them the Construction Exclusion. (Def.'s Opp., 15-17.) It argues that because this is an action between two insurers, Section 3420(d) does not apply and so the Construction Exclusion does apply despite the lack of timely disclaimer.

Wausau is correct in this regard, and so the Court need not discuss Wausau's other arguments as to why Item 11 does not require it to defend and indemnify Brooks and Macerich.

Section 3420(d) of the New York Insurance Law provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d)(2). As the First Department explained:

> It is clear that the notice requirement of § 3420(d) is designed to protect the insured and the injured person or other claimant against the risk, posed by a delay in learning the insurer's position, of expending energy and resources in an ultimately futile attempt to recover damages from an insurer or forgoing alternative methods for recovering damages until it is too late to pursue them successfully.

*Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 806 N.Y.S.2d 53, 58 (1st Dept. 2005); *see id.* (collecting cases). But "these are not the risks to which another insurer seeking contribution is subject." *Id.* Thus, New York courts have found that Section 3420(d) does not apply to claims between insurers, whether those claims are for contribution or for full defense and indemnity. *See id.*; *see also JT Magen v. Hartford Fire Ins. Co.*, 64 A.D.3d 266, 271, 879 N.Y.S.2d 100, 103 (1st Dept. 2009) (collecting cases); *Tops Mkts. v. Maryland Cas.*, 700 N.Y.S.2d 325 (4th Dept. 1999). Federal courts, too, have recognized that "Section 3420(d)(2) does not apply to claims between insurers," *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 407 (S.D.N.Y. 2015) (citation and internal quotation marks omitted), because the text of Section 3420(d)(2) specifically refers to the "insured and the injured person" or "any party that *has a claim against the insured arising under the policy*, which by definition excludes other insurers of the insured." *Id.* (emphasis in original) (citation and internal quotation marks omitted); *see also Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 178 (2d Cir. 2010)

(discussing *Bovis*); *New York State Ins. Fund v. Mount Vernon Fire Ins. Co.*, 371 F. App'x 207, 210 (2d Cir. 2010) (same).

Zurich, on behalf of Brooks and Whiting-Turner, tendered the defense and indemnification of the Underlying Action to Montesano on November 29, 2011, and requested that Montesano forward the tender to its insurance carrier. (Pl.'s 56.1 ¶ 61.) That same day, also on behalf of Brooks and Whiting-Turner, Zurich tendered directly to Wausau for additional insured coverage of the Underlying Action. (Pl.'s 56.1 ¶ 62.) Wausau's affiliate company, Liberty Mutual Insurance, acknowledged receipt of the tenders on February 8, 2012, and requested a copy of the subcontract between Whiting-Turner and Montesano. (Pl.'s 56.1 ¶ 63.) Zurich provided a copy of that subcontract on May 2, 2012, and by the same letter, tendered a claim on behalf of Macerich. (Pl.'s 56.1 ¶ 64.) Prior to the filing of this suit, Wausau did not disclaim coverage (Pl.'s 56.1 ¶ 77-78). However, in its answer filed October 3, 2014, Wausau asserted as an affirmative defense that "[c]overage for the Underlying Actions are barred by [the Construction Exclusion]." (Ans., ECF No. 18, ¶ 112.)

Were this not an action between two insurers, Zurich might have a colorable claim that Wausau failed to comply with Section 3420(d) by not giving notice of disclaimer as soon as reasonably possible, and thus that Wausau could not rely on the Construction Exclusion. However, this *is* a defense and indemnity action by one insurer against another, and as such, Section 3420(d) does not apply. *See Bovis*, 806 N.Y.S.2d at 58. Put differently, whether or not Wausau gave notice as soon as was reasonably possible of its disclaimer of coverage is immaterial: all parties agree that the claim arose out of construction activity, and thus, Wausau can rely on the Construction Exclusion now to deny defense and indemnification under Item 11, regardless of whether it gave notice.

Zurich's arguments to the contrary are not convincing. Zurich argues that the "insurer-to-insurer exception" to Section 3420(d) does not apply in this case because Zurich was acting on behalf of its insured when it sent the tender letters and because, since the Underlying Action is still pending, those parties protected by Section 3420(d)—the insured, the injured party, and other claimants to the policy—still have stakes in the matter. (Pl.'s Reply, ECF No. 65, 13-14.) But none of those other parties are parties to *this* action, nor can Zurich claim the protections of Section 3420(d) on their behalf, as New York courts have made clear. For instance, in a case brought by one insurer against another insurer as well as two mutually insured parties, the First Department explained that the defendant-insurer "was required to give timely notice of disclaimer to the mutual insureds . . . but not to [plaintiff-insurer] (another insurer)." *Greater New York Mut. Ins. Co. v. Chubb Indem. Ins. Co.*, 963 N.Y.S.2d 218 (1st Dept. 2013) (citing *J.T. Magen*, 879 N.Y.S.2d at 102); *see also Sierra v. 4401 Sunset Park, LLC*, 24 N.Y.3d 514, 519 (N.Y. 2014) ("[T]he obligation imposed by the Insurance Law is to give timely notice of disclaimer to the mutual insureds[,] not to another insurer." (quoting *Greater N.Y.*, 963 N.Y.S.2d 218) (alterations and internal quotation marks omitted)). Because the defendant-insurer failed to do so by waiting 15 months to disclaim, the First Department found that it was required to defend and indemnify the mutual insureds, *but* that the defendant-insurer "had no obligation of prompt disclaimer vis-à-vis [plaintiff-insurer]. Hence, its disclaimer was timely insofar as [plaintiff-insurer] is concerned." *Id.* (citing *Bovis*, 806 N.Y.S. 2d at 60). In that case, as in this one, there had been no settlement in the underlying action, and if the damages in the underlying action exceeded the policy limit, the mutual insureds could be liable. *Id.* But though the mutual insureds remained *personally* protected by Section 3420(d), their insurance company was barred from receiving its benefit. *Id.*

If Whiting-Turner, Brooks, or Macerich were themselves plaintiffs here, they could invoke Section 3420(d). Zurich, however, cannot, because "the tendering carrier did not get the benefit of § 3420(d) from a tendering letter it sent on behalf of its insured because that section does not apply to claims between insurers." *J.T. Magen*, 879 N.Y.S.2d at 102; *see also Bovis*, 806 N.Y.S.2d at 60 (finding disclaimer timely as to insurer-plaintiff but invalid as to policyholder plaintiffs). As "the obligation imposed by the Insurance Law is to give timely notice of disclaimer to the mutual insureds[,] not to another insurer," *Sierra*, 24 N.Y.3d at 519 (alterations and internal quotation marks omitted), Wausau owed no obligation of timely disclaimer to Zurich itself. Hence, its eventual disclaimer was timely insofar as Zurich was concerned.

No party disputes that Montesano was engaged in construction activity. The Construction Exclusion applies, and therefore, Zurich is not entitled to reimbursement for its defense of Brooks and Macerich.[4]

## CONCLUSION

For the reasons stated herein, Defendant Wausau's motion for summary judgment is granted, and Plaintiff Zurich's motion for summary judgment is denied. The Clerk of Court is respectfully instructed to close this case.

**SO ORDERED.**

**Dated:** August 29, 2016
New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge

---

[4] Because Wausau has no duty to defend or indemnify, the Court need not reach the parties' discussion of whether the Wausau policy applies primary to, or in contribution with, the Zurich policy.